ABIGAIL DE PUY, Appellant, *v.* WILLIAM QUINN,
Respondent.

*Juror — exclusion of, in a civil damage act case, because of a prejudice against the sale of liquor — what considered on appeal.*

In an action, brought to recover damages under the civil damage act, a juror was challenged by the defendant, and upon being examined as to his competency said that he did not think much of the business of selling liquor, and that he would go into the jury-box with a prejudice against it. He further testified that he had no prejudice against the defendant, and could give an impartial verdict irrespective of what he thought of the business itself.

*Held,* that the juror was competent and his exclusion was error.

That the question of fact whether the juror is indifferent between the parties is one for the court; and it must be decided by the court, and an appeal lies from such decision.

That the court cannot arbitrarily excuse a competent juror.

That the fact that the juror had an opinion relative to the sale of liquor was not material.

That an appellate court, in deciding upon the propriety of a ruling as to the competency of a juror, cannot go outside the record, *e. g.,* to consider the effect of the appearance of the juror, and his manner of testifying, unless some statement in reference thereto appears in the record. (Macomber, J., dissenting, on the ground that the challenge was not for principal cause, but to the favor and for actual bias, in deciding which the judgment of the trial court should not be disturbed.)

Appeal by the plaintiff Abigail De Puy from a judgment of the Supreme Court, entered in the office of the clerk of the county of Cayuga on the 28th day of October, 1890, after a trial at the Cayuga Circuit before the court and a jury, at which a verdict was rendered for the defendant; and also from an order, entered in said office on the 5th day of November, 1890, denying a motion for a new trial upon the minutes.

*F. D. Wright,* for the appellant.

*Lyon & Pierce,* for the respondent.

Lewis, J. :

This action was brought under the civil damage act to recover damages against defendant for the loss of the means of support of

the plaintiff caused by the death of her son while intoxicated, which intoxication the plaintiff alleged was caused in whole or in part by intoxicating liquors furnished him by defendant.

The only question which it is necessary to examine upon this appeal is the one raised by the plaintiff's exceptions to the ruling of the trial court sustaining the defendant's challenges to the proposed jurors, George C. Graham and W. T. Tuller, who were members of the panel of jurors in attendance upon the court. Graham, when called, was challenged by defendant, and the following proceedings were had. He was sworn as to his competency as a juror, and was examined by defendant's counsel, and testified that he did not think much of the business of selling liquor; that he had a prejudice against it, and that were he to sit as a juror in the case he would go into the box with a prejudice against the business. He further testified that he had no prejudice against the defendant; that he could sit and hear the evidence and give an impartial verdict according to the evidence in the case, irrespective of what he thought of the business itself. The trial court allowed the challenge and excused the juror, and the plaintiff excepted. Like proceedings were had and testimony to the same purport was given when Tuller was called, and there was a like ruling by the court and an exception by the plaintiff. The parties exhausted their peremptory challenges. A panel of jurors was secured, the trial proceeded and resulted in a verdict for the defendant. The trial court was required to decide the question, "Was the proposed juror indifferent between the parties?" That question, section 1180 of the Code provides, must be tried and determined by the court only. Either party may take an exception and the determination of the court is reviewed in the same manner as when an issue of fact presented by the pleadings is tried by the court, and the case is required to contain the matters necessary to present the facts upon which the determination excepted to was based.

In impanneling jurors a liberal discretion is vested in the trial court. Such discretion conduces to the just and correct administration of law in the trial of causes by jury. Yet litigants are entitled to the benefit of the provisions of law governing the impanneling of juries. Section 1166 of the Code of Civil Procedure provides that the first twelve persons who appear as their names are drawn

and called, and are approved as indifferent between the parties and not discharged or excused, must be sworn to constitute a jury to try the issue. The court cannot arbitrarily excuse a proposed juror who is, in all respects, competent to sit. If the facts presented failed to prove that Graham and Tuller were disqualified to sit as jurors in the case, it was error to exclude them. And it was so held in the case of *Hildreth* v. *The City of Troy* (101 N. Y., 234). The ground of challenge in that case was that the juror was incompetent because he was a resident and taxpayer in the city of Troy. The challenge was sustained.

The charter of the city provided that the facts mentioned did not disqualify a person as a juror in a case in which the city was defendant, and Justice ANDREWS, in his opinion, says: " Jurors differ in intelligence, judgment and fitness to act as jurors. It is, we think, the legal right of a party to have the jury selected from the competent names in the jury-box, and that the range of selection shall not be limited by excluding, without cause, competent jurors from the panel. * * * The law prescribes the qualifications of jurors. The court cannot add to or detract from them. It cannot itself select the jury, directly or indirectly. . It cannot, in its discretion, or capriciously, set aside jurors as incompetent whom the law declares are competent, and thus limit the selection of the jury to jurors whose names may be left. If this is done a legal right is violated for which an appellate court will give redress." It was a question of law that was presented for the decision of the court in the case of *Hildreth* v. *The City of Troy*. In the case at bar the court was required to decide the question of fact, " Was the proposed juror indifferent between the parties ? "

The question litigated in this case was, Did the defendant sell or furnish to the deceased liquor, which wholly or in part caused his intoxication, etc. The propriety or morality of selling liquor was not in question any more than were the political or religious views of the defendant. The jurors stated they had no prejudice against the defendant; that it would not require any greater evidence in a case tried before them where one party was engaged in that business than if he were engaged in any other business; that they could sit and hear the evidence and give an impartial verdict according to the evidence in the case, irrespective of what they thought of the

business of selling liquor. They were, so they testified, indifferent between the parties.

A very large proportion of persons who have arrived at their majority entertain opinions as to the propriety of selling liquor to be used as a beverage. The majority of them undoubtedly think it does not tend to elevate and improve mankind, and such opinion is not confined to the classes not engaged in the business. Substantially, every one has an opinion upon the subject. They either think it is or is not a beneficial calling.

If one who, like Graham, does not think much of the business, is adjudged incompetent to sit, a person entertaining an opposite opinion ought also to be held incompetent, and juries would have to be selected from those who had never given the subject sufficient reflection to have formed an opinion, if such could be found possessing the qualifications required by section 1126 of the Code, " in the possession of his natural faculties, * * * intelligent, of sound mind and good character and able to read and write the English language understandingly."

It does not seem to us that the fact that Graham and Tuller entertained a prejudice against the business of selling liquor disqualified them to sit as jurors in the case, so long as they testified that they were indifferent between the parties, and could sit and hear the evidence and give an impartial verdict according to the evidence in the case, irrespective of what they thought of the business.

It is suggested that the court, having the juror before him, had a better opportunity to judge of the qualifications of the juror than the appellate court ; that he saw the juror, his manner of testifying and his appearance generally. We must, however, assume that no unfavorable impressions were thus obtained by the court, as the case fails to so state. There is the usual certificate in the case that it contains all the evidence and proceedings in the action.

If their manner and appearance afforded to the trial justice evidence of their unfitness, that fact should have been stated in the case and would be decisive of the question before us. To go outside of the case and indulge in speculation as to what might have influenced the mind of the court would render nugatory the provisions of the Code, providing for the review of the rulings of the trial court on such questions.

The respondent further suggests that the appellant had induced the trial justice to hold that a juror was disqualified if he was prejudiced against the civil damage act, and that he had thereby established a precedent, and should be held to be estopped from objecting to the enforcement of the rule against him. .

It may well be doubted if the questions were alike in principle. The jury when impanneled became an important part of the court, which was to be asked to enforce the law if it had been violated; and if a juror, who is opposed to capital punishment, is disqualified as a juror on the trial of a person charged with a crime where the punishment is death, it might, perhaps, be correctly held that a juror entertaining a prejudice against the act in question ought not to be allowed to sit in such a case, but we do not think the doctrine of estoppel can be held to apply to such a question.

We think there was an absence of any evidence tending to show that Graham and Tuller were incompetent to sit as jurors in the case, and that it was error to exclude them, for which the judgment should be reversed.

The judgment and order denying a new trial should be reversed and a new trial granted, with costs to abide the event.

DWIGHT, P. J., concurred.

MACOMBER, J. (dissenting):

The motion for a new trial, the denial of which is claimed to be an error, was made upon the following grounds : (1.) That the challenge interposed by the defendant to each of two jurors was erroneously sustained by the court. (2.) That the verdict was against the weight of the evidence and should have been for the plaintiff.

It is quite clear that the jury must have rejected the testimony of the plaintiff's two witnesses, Dorr Baker and Simeon Baker, as wholly unworthy of credit and insufficient to support a verdict. The character of these witnesses for truth was necessarily before the jury, and the latter's determination thereof ought not to be disturbed by the court; for it is impossible to discover in the verdict any evidence that the jury was actuated by prejudice or any other unworthy motive. The account which these two witnesses respectively give of themselves, and of their connection with the case and

its incidents, was well calculated to produce upon the mind of the persons passing upon the question of fact a keen distrust of them, and a lively apprehension that a verdict could not be safely rendered upon their testimony. This may, indeed, be a misfortune to the plaintiff, yet the defendant ought not to be held in damages, except upon evidence given by witnesses worthy of belief. This part of the case, therefore, is easily disposed of upon reading the testimony of the witnesses upon whom the plaintiff's case almost wholly depended, and which the jury had a right to discredit.

But there is a question more elaborately discussed in the brief of the learned counsel for the appellant, which merits serious attention. The action was brought under the civil damage act (chap. 646, Laws of 1873) for the loss to the plaintiff of the means of support afforded by her son, who was her main reliance. The son was drowned April 20, 1889, in the race-way leading from Owasco lake to the Auburn Water-works Company, caused, as was alleged, by the intoxication, produced in whole or in part, by intoxicating liquor furnished to the deceased by the defendant.

The peremptory challenges to the jurors allowed by the statute at that time (two in number), had been exhausted, but whether before or after the challenges made to the two jurors in question does not distinctly appear in the case. Two jurors, Graham and Tuller, were called and challenged by the defendant, which challenges were sustained by the court. The questions and answers of the two jurors and the objections made, respectively, to them were so nearly alike that they may, for the purposes of this review, be grouped together. They were, respectively, asked whether they had a prejudice against the liquor business. Each answered that he had, and that he would carry the prejudice against that business into the jury box; and it was claimed by the defendant that such prejudice would influence his verdict. Graham answered as follows: " Q. So that if you were to sit as a juror in this case you would go into the box with a prejudice against the business, would you not? A. I would against the business; yes, sir." On examination by the plaintiff's counsel he stated that he had no prejudice against the defendant, and that he could sit and hear the evidence and give an impartial verdict according to the evidence, irrespective of what he thought of the business. The juror Tuller further answered as

follows: " Q. So that if you were to sit as a juror in this case you would go into the box with that prejudice existing in your mind? A. Yes, sir, I think I would." This juror also said that he had no prejudice against the defendant, and that he could decide impartially upon the evidence. The challenge to each juror was sustained by the court and an exception was taken, and upon these two exceptions the appellant mainly relies for a reversal of the judgment.

The first clause of section 1166 of the Code of Civil Procedure provides as follows: " The first twelve persons who appear, as their names are drawn and called, and approved as indifferent between the parties, and not discharged or excused, must be sworn, and constitute the jury to try the issue." By section 1180, "An objection to the qualifications of a juror is available only upon a challenge. A challenge of a juror, or a challenge to the panel or array of jurors, must be tried and determined by the court only. Either party may except to the determination, and it may be reviewed, upon a question of fact, or a question of law, or both, as where an issue of fact presented by the pleadings is tried by the court; except that where one or more exceptions are taken, to the rulings of the court, made after the jury is empaneled, an exception to the determination of a challenge must be heard at the same time; and the case must contain the matters necessary to present it, upon the facts, or the law, or both."

Had the learned justice presiding at the trial ruled otherwise than as he did upon this question (assuming, in passing, that the challenge was for principal cause), such ruling clearly enough would not have been disturbed upon any review of it, for we are of the opinion that the objection of a juror to the business in which the defendant was shown to be engaged, namely, that of retail liquor selling, was not a legal disqualification on a challenge for principal cause, and that so long as it appeared that the juror could hear the evidence and render a dispassionate verdict he was competent within the meaning of the statute. But it by no means follows that the ruling actually made by the learned justice must result in a reversal of the judgment. The challenge was not for principal cause, as it seems to me, but to the favor and for actual bias. Had the challenge been placed upon the ground that the juror was not competent to sit, and was actually disqualified, by the terms of the statute, by reason

of entertaining such prejudice, the ruling of the learned judge would have presented clearly a legal error; that is to say, an error in law, and not merely an erroneous conclusion upon a question of fact.

These two sections of the statute above quoted must be considered and construed together. Taken as a whole, they properly give to the trial judge an ample discretion. By section 1880 the decision is reviewable according to the nature of the objection, either as a question of law or a question of fact. Where, however, the question, as in this case, is undertaken to be reviewed by appeal as arising upon a question of fact, that is to say, where the conclusion of the learned trial judge as to the competency of the juror under a challenge for actual bias is drawn in question, then recourse must be had to the provision of section 1166. Under this section each of the jurors must be approved as indifferent between the parties. The judge at the trial had means of accurately determining the capacity and integrity of the jurors which the court, on appeal, cannot possibly possess from an inspection of the printed record alone. The jurors' mode of answering questions, intelligence, appearance, together with their apparent candor, general character, and the many little things which appear on the *voir dire*, but which are incapable of being reproduced in print, were elements which necessarily entered into the final determination of the trial judge in his selection of the twelve men. So long as it appears clearly, as it does in the case before us, that twelve indifferent and impartial men were actually impanneled to try the case, the appellate branch of the Supreme Court should be loth to reverse the results of the trial simply upon the ground that the members of that court might have come to a different conclusion, acting solely upon the printed testimony, from the one arrived at by the trial judge. From the nature of the case much latitude must be given to the judge at the circuit. Were the obverse of the question presented, namely, a juror retained by the court who ought to have been excluded; and a case thus presented, which would raise a suspicion of a tainted verdict, an entirely different question would be presented.

The conclusion of the justice upon the question of the actual bias of the jurors ought not to be disturbed unless the party appealing has been prejudiced. It cannot be said that a party is prejudiced

in law by a ruling of the court that excluded from a panel of jurors persons that were hostile and opposed to the business carried on by his opponent. (*Maretzek* v. *Cauldwell*, 5 Rob., 660.) In the case of criminal actions, the expression or formation of an opinion, or impression in reference to the guilt or innocence of the defendant, or a present opinion or impression in reference thereto, is not a sufficient ground for a challenge for actual bias to any person otherwise legally qualified, if he declare on oath that he believes such opinion or impression will not influence his verdict, and that he can render an impartial verdict according to the evidence, and the court is satisfied that he does not entertain such a present opinion or impression as would influence his verdict.

In analogy to this statute for the trial of criminal cases, where the general provision for the impanneling of a jury is the same as in civil actions, why should not the trial court be left untrammeled in its effort to exclude from the jury-box every person having an actual bias against the business of one of the parties when such occupation is neither *malum in se* nor *malum prohibitum?* While, therefore, the rejection of a competent juror may be deemed ground of error, although the jurors who actually try the case are competent, as was held in the case of *Hildreth* v. *The City of Troy* (101 N. Y., 234), where the error of the trial judge was one of law, holding that a juror was incompetent by reason of being an inhabitant of the city which was the defendant, yet, where the objection goes to actual bias, and the determination thereof was at most but an error of fact, and that, too, in an effort to obtain an impartial jury; and where there appears to be no objection to the twelve jurors actually impanneled, I am of the opinion that the error is unimportant and not prejudicial to any legal rights of the appellant, and that, consequently, there should be no review of such determination except in the case of abuse, or an arbitrary use of power by the trial judge of which there is not the slightest suggestion in the case before us.

There is another reason why the appellant ought not to be allowed to prevail upon this appeal, and that is, that prior to the challenge made to the jurors, Graham and Tuller, the plaintiff's counsel had examined three jurors who had stated, in answer to his questions, that they were prejudiced against the enforcement of the civil damage act; and thereupon the counsel asked for and obtained a ruling of

the court that such jurors were not competent to sit. The plaintiff, therefore, appears in the attitude of a person who had, through great diligence of counsel, obtained a decision of the trial court upon the qualification of jurors under this statute (assuming that such challenge was for principal cause), and he ought not now to be heard to complain if, after procuring such ruling, the court felt bound to be entirely consistent, and applied the correlative proposition in favor of the defendant's contention, namely, that prejudice against the business of liquor selling was also a disqualification. If one proposition is correct, the other must be also.

The judgment and order appealed from should be affirmed.