WILLIAM KRENS V. STATE OF NEBRASKA.

FILED DECEMBER 20, 1905.   No. 14,040.

1. Criminal Law: CODEFENDANTS: REVIEW.   Where two persons charged jointly with a criminal offense demand and are accorded separate trials, an order of the court refusing the request of the one on trial for the presence of his codefendant in the court room will not be reviewed by the appellate court, in the absence of any showing of prejudice resulting to the rights of the accused by the refusal of such request.

2. Evidence of identification of shoes taken from the defendants examined, and held sufficient.

3. Evidence: CODEFENDANTS.   One of two persons jointly charged with the commission of a crime cannot, by being accorded a separate trial, prevent the state from introducing evidence, otherwise competent, to prove his guilt, because such evidence also tends to establish the guilt of his codefendant.

4. Evidence describing comparisons made between the shoes worn by the accused and footprints found near the place where the crime was committed, without the opinions of the witnesses, is proper and competent as tending to connect the accused with the commission of the offense.

ERROR to the district court for Custer county: BRUNO O. HOSTETLER, JUDGE.   Affirmed.

Aaron Wall, C. L. Gutterson and N. T. Gadd, for plaintiff in error.

F. N. Prout, Attorney General, and Norris Brown, contra.

BARNES, J.

The plaintiff in error, William Krens, together with his brother Joseph, were jointly charged with the crime of

burning a certain stack of oats, of the value of $35 and upwards, belonging to one Albert J. Read, on the 10th day of September, 1904, in Custer county, Nebraska. When the case came on for hearing in the district court for that county, both defendants demanded separate trials. The court, in compliance with their demands, ordered a severance; and the plaintiff, who will hereafter be called the accused, was placed upon his trial, which resulted in his conviction. He was thereupon sentenced to serve a term of two years in the state penitentiary. To reverse that judgment he brings error to this court, and relies for a reversal upon four assignments.

1. He contends that the court erred in refusing to permit his codefendant, Joseph Krens, to remain in the court-room during his trial.

It is a sufficient answer to this contention to say that the matter complained of is one resting in the sound discretion of the trial court. There is no showing of an abuse of such discretion, or that the accused was in any way prejudiced in his substantial rights by the refusal to allow his codefendant to be present at the trial. The order complained of was the result of the severance which the accused demanded, and he is not in a position to complain of a situation which resulted from his own action.

2. Complaint is also made of the action of the trial court in admitting in evidence state's exhibits "A" and "B," the former being the shoes of the accused, and the latter those of his codefendant, Joseph, because of lack of proper identification. It appears from the evidence that on the 10th day of September, 1904, Albert J. Read had a party of the name of Howard threshing for him with a steam thresher. Howard had recently come into the neighborhood from a distance, bringing with him his threshing outfit, and this was his first work in that neighborhood. That night, after Mr. Read had retired, he was awakened by a neighbor, who informed him that a fire was destroying his grain stack and other property. Read and Howard went immediately to the scene of the fire, where

they found the grain, straw, wagons, racks and separator were either burned up, or were then burning. It was discovered that certain parts or attachments of the engine, which stood some distance from the fire, had been broken off and thrown into the burning stack. It appears that the accused and his codefendant were, during that season, and had been for several seasons prior thereto, engaged in running a threshing machine in that vicinity. Previous to the fire the accused stated to one Herman Burrows that "if any other machine would pull onto his run he would fix them." He also made substantially the same statement to one William Hanna. At daylight, the next morning after the fire, Read and Howard found the tracks of two persons only a short distance from the burned grain stack leading away from it and in the direction of the residence of the accused. They followed the tracks across two pieces of plowed ground, some stubble, through a corn field, across another stubble field, and to within a couple of rods of the house where the accused lived and was staying at the time of the fire. The tracks were subsequently followed by Charles Hussie, George Luce and William Haney. The accused and his codefendant were arrested by the sheriff of Custer county on the afternoon following the fire, and their shoes were taken from them by the officer, who testified that exhibit "A" was the pair of shoes he took from the accused, and exhibit "B" was the pair taken from his codefendant, Joseph. According to the testimony of the sheriff, exhibit "A" was a pair of pegged shoes, one of them having a defective heel; and exhibit "B" was a pair of box-toed sewed shoes. While the officer was somewhat uncertain in his explanation as to how he knew that the shoes, exhibit "A," belonged to the accused, and exhibit "B" to his codefendant, yet his testimony was positive that he took the shoes, exhibit "A," from the accused; that they were worn by him at the time he was arrested, and that exhibit "B" was the pair worn by Joseph. So we are satisfied that the identification was sufficient, and the trial court did not err in permitting the shoes to be introduced in evidence.

3. The accused further contends that the trial court erred in admitting in evidence the facts and circumstances which tended to show the presence of his codefendant at the place where the fire occured. Counsel's line of argument in support of this contention seems to be that the accused should not be burdened with the facts which concerned his codefendant; "that it is not contended that more than one pair of the shoes belonged to him, yet the state introduced in evidence, over his objection, not only the shoes claimed to have been taken from him, but likewise the shoes purported to have been taken from the person of Joseph; that the evidence from beginning to end involves one pair of shoes as much as it does the other; that one reading the record would be impressed from the evidence that two persons were being tried for the offense instead of one." No authorities are cited in support of this contention, and it would seem a sufficient answer to it to say that the accused and his brother, Joseph, were informed against jointly for the commission of the crime for which the accused was on trial; that it would be practically impossible for the state to prove that the offense was committed by the accused, without the introduction of proof tending to show the guilt of his codefendant, Joseph. Any competent evidence which tended to show that both of the accused persons were present at the time and place where the fire occurred, and probably committed the offense, should be received upon the trial of either of them. Persons jointly charged with the commission of a crime cannot, by demanding separate trials, deprive the state of the right to introduce competent evidence to prove the guilt of the one on trial, because such evidence also tends to connect the other with the commission of the offense charged. So, where two persons are charged jointly with a criminal offense, it is proper to prove, on the trial of one of them, that they were both present and participated in its commission.

We are therefore of opinion that the district court did not err in receiving the evidence complained of.

4. Lastly, it is contended that the court erred in admitting the state's evidence describing the tracks and the comparisons made between them, and the shoes, exhibits "A" and "B." From an examination of the evidence it appears that the persons who made these comparisons testified to what they did, and the things they saw; how the shoes were taken from the accused and his codefendant and fitted into the tracks which led from the fire to a point near their residence, leaving the jury to draw their own conclusions from the facts thus related. The witnesses were not allowed to testify as to their conclusions, but were permitted to state what they did, and how they made the comparisons, and what such comparisons showed. This evidence was proper and competent, because it tended to connect the accused with the commission of the crime charged against him. *People v. McCurdy,* 68 Cal. 576; *Commonwealth v. Pope,* 103 Mass. 440; *Clark v. State,* 28 Tex. App. 189. As counsel for the accused has not directed our attention to any authorities supporting his contention, we conclude that the trial court properly received the evidence complained of.

An examination of the record convinces us that the accused was accorded a fair trial, and that the evidence is sufficient to sustain the verdict and judgment. We are satisfied that the record contained no reversible error, and the judgment of the district court is therefore

AFFIRMED.